IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL KEITH BRYANT,

        Plaintiff,                    No. CIV S-06-0688 GEB EFB P

    vs.

SACRAMENTO COUNTY JAIL, et al.,

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

    Plaintiff is a prisoner without counsel seeking relief for alleged civil rights violations which occurred while he was a pretrial detainee at the Sacramento County Mail Jail. *See* 42 U.S.C. § 1983. This action proceeds on the June 22, 2006, first amended complaint (hereafter "Am. Compl.") in which plaintiff alleges that defendants C. Mason, S. Douglas, McEntire, J. Ilaga, and Guerrero used excessive force against him. The matter is now before the court on defendants' November 30, 2006, motion to dismiss on the ground that plaintiff failed to exhaust the available administrative remedies.

**I.    Facts**

    **A. Plaintiff's Allegation of Excessive Force**

    In the first amended complaint, plaintiff alleges that on or around January 19, 2005, defendants used excessive force against him as he attempted to explain a difficulty involving

1

plaintiff's authorization to have a lower bunk. Am. Compl., at 1. He alleges that defendant McIntire punched him in the jaw, and even though he was attempting to cooperate, defendants J. Illaga, Guerro and other officers punched him while forcing him to the ground. Am. Compl., at 1-2. Plaintiff alleges that another officer repeatedly kicked him in the head, C. Mason punched him in the mouth, knocking out several teeth, and that he thereafter tightly was shackled into a "prostraint chair," where he was left for about six hours with a hood over his head. *Id.*, at 2. While there, he was "taunted, struck, smacked, and threatened." *Id*. He then was placed into a "dry-cell," where he lacked access to water, food or medical care until the time of his arraignment on charges of assault on a peace officer.

**B. The Administrative Grievance Procedure**

In support of their motion, defendants submit the declaration of Brendon Hom, the Administrative Sergeant in the Executive Office at the Sacramento County Mail Jail, where detainee grievances are maintained. Defs.' Mot. to Dism., Ex. B, Decl. of Brendon Hom ("Hom Decl."). Mr. Hom describes the grievance procedure, which was established pursuant to a state regulation setting minimum standards for jail grievance procedures.[1] *Id.*, at 1. The process has three levels of review. *Id.* On the first level, a detainee must informally notify the Housing Unit Officer of the problem. *Id.*, at 1-2. Only if this does not solve the problem may the detainee file a written grievance, which triggers second-level review. *Id.*, at 2. Jail regulations require that the written grievance be filed within five calendar days of the incident giving rise to the detainee's complaint. *Id.* The detainee files the grievance by giving it to a Housing Unit

---

[1] The regulation provides for "minimum standards for local detention facilities," i.e., jails, including standards for inmate grievance procedures. Cal. Admin. Code, tit. 15, § 1073. Thus, at a minimum, these facilities must maintain written policies and procedures for inmates to seek redress for grievances about the conditions of their confinement. Cal. Admin. Code, tit. 15, § 1073(a). These must include the following: (1) a grievance form or instructions for making a grievance; (2) the opportunity to resolve grievances at the lowest appropriate staff level; (3) appeal to the next level of review; (4) written reasons for denial at each level that considers the grievance; (5) reasonable time-limits for responding to grievances; and, (6) provision for resolving questions of jurisdiction within the facility. *Id*.

Deputy, who must resolve the problem if possible. *Id.* "No deputy shall refuse to accept a grievance." Defs.' Mot. to Dism., Ex. A. If resolution is impossible, then the written grievance must be forwarded to a sergeant, who must review all relevant reports, records, documents and files, and must take any action necessary to resolve the problem. Hom Decl., at 2. If the sergeant cannot provide any relief, then he must forward all the appeal materials to the Executive Lieutenant within ten days, who must respond to the grievance within five days. *Id.* Response from the Executive Lieutenant concludes second-level review. A detainee has five days from the date of the Executive Lieutenant's response to file a written grievance with the Jail Commander. *Id.* This procedure is detailed in a written order. *Id*.

Mr. Hom states in his declaration that he searched the database of grievances filed at the Sacramento County Mail Jail for grievances by plaintiff. *Id.* He found none. *Id.*

Plaintiff asserts that while he was in the "dry cell" he got the attention of deputies by pressing the emergency call button, and he "asked for a grievance." Pl.'s Opp'n, at 1. Deputies responded that if he "ever pressed that button other than being on fire, [he] would wish [he] hadn't." He also asserts that on January 20, 2005, he spoke to unidentified deputies about the incident while they made their rounds. *Id*., at 1. They told plaintiff to fill out a form, which they provided him. *Id.* Plaintiff completed the form, and the next day someone took it from him. *Id*. However, two days later, a sergeant approached plaintiff's cell and told plaintiff that he could "not grieve being charged with assault on a police officer," and walked away. *Id.* On January 25, 2005, plaintiff spoke with a lieutenant, who advised plaintiff to file a written grievance with the Jail Commander. *Id.* Plaintiff did so on January 29, 2005, and attaches copies of that grievance to his opposition. In it, he explains the incident of January 19, 2005, in detail. On June 16, 2005, plaintiff received a letter from a lieutenant from the Internal Affairs Bureau thanking him for his complaint about the events of January 19, 2005, and stating,

> We have investigated this matter fully and have reviewed the evidence relevant to your case. We have determined the facts are not sufficient to support your allegations of excessive force. Based on the findings, the disposition of the

3

allegation has been classified as "Unfounded."

Plaintiff also submits a letter dated January 29, 2005, in which he informs the "Jail Commandor" [sic] that he had "placed numerous grievance forms" about having been attacked, "but officers refuse to take or document " them. Pl.'s Opp'n, at 9. He also stated that he had "tried numerous times to talk to a sergeant but that [sic] impossible here" in the "Security Housing Pod" where he was confined. *Id.*

## II. Standards Applicable to This Motion

Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure. While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined. The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[2] *Wyatt*, 315 F.3d at 1119. However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). Federal courts appropriately consider affirmative defenses on summary judgment. Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

////

////

---

[2] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14

## III. Rule 56 Standards

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] Summary judgment pursuant to Fed. R. Civ. P. 56 avoids unnecessary trials in cases with no disputed material facts.[4] *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

---

[3] On September 26, 2006, the court expressly informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). Pursuant to *Wyatt*, 315 F.3d at 1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure to exhaust motion that is supported by affidavits or declarations and exhibits.

[4] On July 31, 2006, the court expressly informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988). Pursuant to *Wyatt*, 315 F.3d at 1120, n.4, that order also expressly informed plaintiff of the requirements for opposing a failure to exhaust motion that is supported by affidavits or declarations and exhibits.

> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

**IV.    Failure to Exhaust**

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Administrative remedies are available so long as some form of redress may be

6

1 obtained through an established procedure. *Booth v. Churner*, 532 U.S. 731, 738-39 (2001).
2 There is no obligation to exhaust a remedy that is not "available." *See*, *Brown v. Valoff*, 422
3 F.3d 926, 935 (9th Cir. 2005) (no need to file further appeals once prisoner has received all
4 "available" redress at an intermediate level of review or reliably has been informed by an
5 administrator that no remedies are available). A remedy is unavailable when prison officials'
6 neglect or omission prevents an inmate from utilizing it. *See Lewis v. Washington*, 300 F.3d 829,
7 833 (7th Cir. 2002); *Brown v. Croak*, 312 F.3d 109 (3rd Cir. 2002); *Foulk v. Charrier*, 262 F.3d
8 687, 698 (8th Cir. 2001).

**IV.     Analysis**

Defendants contend that there is no record that plaintiff followed the jail's grievance procedure. However, plaintiff contends that the remedy was not available to him. In light of plaintiff's contentions, it is significant that there has been no evidence submitted that plaintiff ever received, saw or otherwise was notified of this jail's grievance procedure. Rather, Mr. Hom's declaration simply describes the grievance procedure and concludes that a search of records failed to show that plaintiff ever utilized it. The summary judgment standard places particular focus on which party will bear the burden of proof on the question at issue in the motion. *See Celotex*, 477 U.S. at 324. Here, failure to exhaust is an affirmative defense and it plainly is defendants' burden to establish that plaintiff failed to pursue and exhaust all available administrative remedies. *Brown*, 422 F.3d at 936; *Wyatt*, 315 F.3d at 1119. Thus, the absence of evidence on the issue is fatal the defendants' motion.

Plaintiff asserts that after deputies "attacked" him, he was placed into a special housing pod. He wanted to complain about the beating, and pressed the emergency button to get the deputies' attention so as to commence the process. In response to pressing this button and inquiring about the grievance process, a deputy threatened that he must never press the emergency button again unless he was on fire, or he would be sorry. He spoke to deputies about the attack as they made their rounds, and they gave him forms to complete. Plaintiff asserts that

1 he completed the forms, and another deputy collected them.  There is no evidence of what forms
2 these were, but plaintiff asserts that two days later a sergeant approached plaintiff and told him
3 that plaintiff  "could not grieve being charged with assault on a police officer."  Thereafter,
4 plaintiff spoke with a lieutenant, who advised him to file a written grievance with the Jail
5 Commander.  It appears that the lieutenant provided plaintiff with forms to file a citizen's
6 complaint.  Plaintiff completed these forms and pursued the process far enough to have the
7 Internal Affairs Bureau "fully investigate" his allegations and find that they were unfounded.  It
8 is important to iterate that defendants have the burden of proving that plaintiff failed to exhaust.
9 Defendants nowhere contend that filing a citizen's complaint fails to exhaust the available
10 administrative remedies.  However, it appears from the section 1073 of Title 15 of the California
11 Code of Regulations that individual internal jail grievance procedures are distinct from filing a
12 citizen's complaint.  Thus, while plaintiff's citizen's complaint is relevant to the issue before the
13 court, it is not dispositive.

14 Defendants make much of their written policy without so much as an assertion that they
15 notified plaintiff of this policy.  No evidence is produced that plaintiff knew or was informed that
16 the jail had its own policy independent of the procedures for filing a citizen's complaint.  In fact,
17 it appears that plaintiff wanted to utilize whatever remedy was available, and he depended on his
18 jailors to learn how to proceed and to in fact proceed.  While plaintiff does not specifically deny
19 knowledge of the jail's procedures, he demonstrates that within at least two days of having been
20 brutally beaten, he was attempting to pursue a grievance procedure.  Defendants do not dispute
21 this.  Thus, there is no occasion for concern that plaintiff was reluctant "to give the agency a fair
22 and full opportunity to adjudicate [his] claims."  *Woodford*, 126 S.Ct. at 2385.  Neither do
23 defendants demonstrate that plaintiff had access to a law library or any resources other than his
24 jailors from which he could have discovered the policy for himself.  Insofar as these procedures
25 were unknown or unknowable to plaintiff, they were not available to him.  Insofar as plaintiff
26 submitted jail grievance forms (as opposed to a citizen's complaint) that were not considered, the

1 remedy was unavailable to him.

2 The exhaustion requirement is designed to "filter out the bad claims and facilitate consideration of the good," by "allow[ing] [jail] officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 127 S.Ct. at 914. The requirement is designed not only to ease the caseload of the federal courts, but also to ease the pressure that state officials invariably face from prisoner litigation. Viewed in this context, but keeping in mind that the requirement is mandatory, and that prisoners must follow whatever established procedure exists, *see Booth*, 532 U.S. at 741 fn. 6, *Woodford v. Ngo*, 126 S.Ct. 2378, 2391-2393 (2006), it is manifest that not only must inmates exhaust, but prison and jail officials must, if a procedure exists, permit the opportunity to do so. If they do not permit that opportunity, "it is difficult to understand how the inmate has any available remedies." *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (*per curiam*) (administrative remedy not available where prison employees refuse to provide inmates with those forms when requested). The Second and Seventh Circuit Courts of Appeal have applied an objective test for deciding whether administrative remedies are "available." *See Kaba v. Stepp*, 458 F.3d 678, 684, 686 (7th Cir. 2006); *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). These Circuit ask whether the remedy would have been available to an ordinary prisoner in the plaintiff's shoes. *Kaba*, 458 F.3d at 686. Applying this objective standard, the Seventh Circuit held that where an inmate shows that prison officials have denied him grievance forms and threatened retaliation for filing grievances, and defendants have neither rebutted this showing nor demonstrated that despite such circumstances the prisoner had access to the grievance system, summary judgment is inappropriate. *Kaba*, 458 F.3d at 686.

23 Given the record before the court, defendants' motion must be denied. The court "cannot say that the prison officials met their burden of proving the availability of administrative remedies." *Id.* As in *Kaba*, there is little doubt here that the jail had a formal process. However, the evidence that the plaintiff proffered in opposition to summary judgment indicated that he was

9

persistently denied access to that process. Indeed, the only form ever presented to him following his requests for the grievance form was that for a citizen complaint that was referred to Internal Affairs, not the actual form for pursuing and exhausting a jail grievance. Plaintiff's evidence is that he pursued every option made available to him. The one option not made available it the process for a jail grievance. There is no obligation to exhaust a remedy that is not "available." *Brown v. Valoff*, 422 F.3d 926, 935.

In accordance with the above, it is hereby RECOMMENDED that defendants' November 30, 2006, motion to dismiss, construed as a motion for summary judgment, be denied and that defendants be given 30 days to file an answer.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 12, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE